**N. W. ELECTRIC POWER COOPERATIVE, INC., a corporation, Appellant,**

v.

**Donald J. BUCKSTEAD and Marjorie M. Buckstead et al., Respondents.**

**No. 29604.**

Missouri Court of Appeals,
Western District.

Feb. 26, 1979.

Phil Hauck, Jack Peace, Stockard, Andereck, Hauck, Sharp & Evans, Trenton, for appellant.

Stephen W. Angle, Warrensburg, for respondents.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and ROBERT R. WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Proceeding in condemnation to acquire right of way for electric transmission line. Commissioners awarded landowners Donald J. Buckstead and Marjorie M. Buckstead $3,530 for 100' wide perpetual easement across 80-acre tract of their farm land in Johnson County. On trial of landowners' exceptions, jury awarded them $8,000.00. Condemnor appeals.

In this court the issues involve the consequences of respondents' failure to make timely answers to interrogatories, and their failure to disclose, in response to interrogatories, the names of witnesses called by them to testify to respondents' damages, the qualification of one of respondents' value witnesses and the propriety of the trial court's exclusion of evidence of the price respondents paid for their property.

N. W. Electric Power Cooperative, Inc. filed an action to condemn a perpetual easement to erect and maintain an electric transmission line on a 100' wide strip across the north 40 acres of the Bucksteads' 80-acre farm. Two pole structures were to be constructed on the land. The length of the easement on the Buckstead property was

1,188 feet. The total area involved was 2.73 acres.

Mr. Buckstead testified that the 80-acre farm had a before taking value of $1,000 per acre and $600 or $700 per acre after taking value. Mrs. Buckstead testified to $1,000 before taking and $750 after. Respondents' witness Shafer testified to before and after values of $850 per acre and $750 per acre. Witness Ogden's figures were total value of $76,000 before and $62,000 after. Appellant's witness testified to a value of $850 per acre before, and $828.75 per acre after, the taking.

The respondents' exceptions to the commissioners' award were filed October 29, 1976. On February 22, 1977, appellant filed interrogatories to be answered by respondents. On March 15, 1977, appellant moved to compel answers to its interrogatories. The motion was taken up on March 28, 1977. The transcript shows the following Docket Entry on that date: "Defendants Buckstead to file answers to Plaintiffs interrogatories within 10 days." No further order appears. The answers were filed April 11, 1977, 14 days later.

The case came to trial on April 13, 1977. Appellant moved to strike the respondents' pleading or alternatively to dismiss for respondents' failure to answer interrogatories within the 10-day period allowed by the court on March 28. The appellant's motion was overruled.

■ In this court, appellant contends that the trial court's ruling was erroneous because Rule 61.01(b)(2) mandatorily requires the striking of the pleading or dismissal of the cause of action of a party who fails to answer interrogatories within the additional time to do so granted by the court.

Rule 61.01(b) provides:

"(b) Failure to Answer Interrogatories. If a party fails to answer interrogatories or file objections thereto within the time provided by law, or if objections are filed thereto which are thereafter overruled and the interrogatories are not timely answered, the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:

"(1) An order striking pleadings or parts thereof, or dismissing the action or proceeding or any part thereof, or render a judgment by default against the disobedient party.

"(2) Upon the showing of reasonable excuse, the court may grant the party failing to answer the interrogatories additional time to file answers but such order shall provide that if the party fails to answer the interrogatories within the additional time allowed, the pleadings of such party shall be stricken or the action be dismissed or that a default judgment shall be rendered against the disobedient party."

Appellant contends that the word "shall" used in subparagraph (2) means that the sanctions thereby authorized are mandatory and that the trial court ignored this mandatory language. Appellant, however, overlooks the requirement of the rule that the order extending the time for answer shall advise the delinquent party that his failure to answer within the time granted will result in his pleadings being stricken or default judgment against him. There is no showing that this requirement of the rule was complied with in this case. In view of the drastic nature of the sanctions involved, strict compliance with the rule should be observed. Absent such compliance, this court will not hold the trial court's refusal to strike respondents' exceptions or to dismiss was error.

■ Appellant's interrogatories asked whether or not the respondents' property had been appraised by them or on their behalf. The response was affirmative.

Interrogatory 12 asked:

"If so, for each appraisal, state:

\*    \*    \*    \*    \*    \*

"b. The name, address and occupation of each appraiser."

The response was:

"(b) Donald J. Buckstead and Marjorie Buckstead."

Interrogatory 15 asked:

"State the names and addresses of all persons whom you propose to give testimony of the value of your lands and/or improvements, both before and after the appropriation mentioned in Interrogatory No. 1."

The response was:

"Ourselves and such other witnesses as may be available at the time of trial, but no other persons have been committed for appraisal at this time."

At a conference just prior to the trial, respondents' counsel stated that the witnesses would be Mr. and Mrs. Buckstead, Gordon Shafer, a real estate man, and Tom Ogden, a real estate broker. Appellant's counsel objected to the use of the last two because they had not been named in the answers to interrogatories. The objection was overruled.

When Shafer was called as a witness, the objection was renewed. Counsel for respondents stated that the answers to interrogatories were true when made and that Shafer and Ogden had been "employed" only on the preceding day. The appellant's objection was overruled.

Appellant here contends that the trial court abused its discretion in overruling its objection to the calling of Shafer and Ogden and contends that it was prejudiced by the ruling because it was unaware of the witnesses until the day of the trial.

Appellant's contention necessarily recognizes the discretion accorded the trial court in the situation here presented. *Missouri State Park Board v. McDaniel*, 473 S.W.2d 774 (Mo.App.1971), cited and relied upon by appellant, discusses at length the discretionary nature of a trial court's application or refusal of sanctions for failure to reveal, in response to interrogatories, the names of witnesses. In *McDaniel*, the trial court was held not to have abused its discretion in refusing to permit testimony by expert value witnesses for the condemnor who had not been named in answers to interrogatories, although they had appraised the property seven or eight months before the trial.

In this case, the respondents explained their failure to notify appellant earlier of the witnesses—they had been "employed" the day before the trial. Appellant does not question the truth of that explanation which the trial court found acceptable.

In its objections in the trial court, appellant stated no claim of prejudice. In this court, appellant complains that, had the witnesses been known earlier, there would have been an opportunity to depose them, placing appellant in a better position to cross-examine and possibly discredit them at the trial. It is also suggested that appellant might have called more expert witnesses had it known that respondents would call two experts.

These were considerations which might well have influenced the trial court in its exercise of discretion had they been called to his attention. Inasmuch as they were not, they can hardly be the basis for concluding that the court's ruling was an abuse of discretion.

Appellant argues that, since the action of the trial court in the "so similar" *McDaniel* case (supra) in refusing to permit the witnesses there to testify was not an abuse of discretion, the contrary ruling of the trial court in this case must have been an abuse of discretion. This argument ignores the nature of judicial discretion. In any event, the fact that in *McDaniel* the witnesses had appraised the property six or seven months before the trial whereas here they did so the preceding day distinguishes the two cases.

No abuse of discretion has been shown in this case. This assignment is without merit.

█ Mr. Shafer testified to his appraisal of the property and his before and after value of it. In his direct examination he testified that he had been a farmer, residing in Johnson County for 58 years, and that he had been a real estate broker for the past three years. He had been familiar with the Buckstead property from driving past it for several years. He testified that before the taking of the easement the farm

had a value of $850 per acre and afterwards $750 per acre.

On cross-examination, Shafer acknowledged that he had not read the condemnation petition and had not looked at the engineering maps. Counsel for appellant moved to strike his testimony on the grounds that the witness was not "knowledgeable, did not know the elements and could not have taken them into account since he did not know the elements of damages which he then relied upon." The motion was overruled. In subsequent cross-examination, Shafer acknowledged that he did not know the standard clearance under the lines, did not, at the time of his appraisal, know the acreage being taken, did not step off the property, nor did he walk the line.

In this court, based upon the foregoing, appellant contends that Shafer should not have been permitted to testify because he was unfamiliar with the rights being acquired by the condemnor and therefore could not have been familiar with the damages incident to the taking.

The witness did state that his testimony was based upon the taking of a 100-foot easement over a 1190-foot strip of land. When asked the rights of the property owner in the easement, he said:

"I understand he can continue to farm it as long as his farming operation doesn't interfere with whatever the line may want because as I understand it, they have an easement against that 100 foot strip of land that goes down through there which gives them control of it whenever they need control."

He said that the condemnor would have construction rights, along with the right to patrol the easement and to go in and make repairs. He stated on cross-examination that he understood that, in the future, the condemnor would take care of any damage caused by its entries on the land.

"One need not be an 'expert,' in the sense that word is ordinarily used, to testify as to the value of land. If the witness knows or has inspected the property, and if he has such information, knowledge, and skill which enable him to form an intelligent judgment, and if this knowledge and information is superior to that possessed by the ordinary person who composes the jury, then he should be permitted to testify. Beyond that any deficiency he may have goes to the weight of his testimony, not to the qualification." *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.*, 381 S.W.2d 20, 24[3–5] (Mo.App.1964).

In this case, Shafer's qualifications included experience in both farming and the real estate business. His responses to questions demonstrated a familiarity with the rights of a condemnor of an easement for an electric transmission line. No issue was taken with the replies which he gave in that regard. He was familiar with the property.

This court cannot conclude that the witness was so lacking in knowledge that his testimony was baseless. Again, the area involves an exercise of discretion by the trial court. *State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc.*, supra. No abuse of discretion here appears.

■ Appellant's final point of error is based upon the trial court's sustaining respondents' objection to the question of Mr. Buckstead at the trial regarding the price he paid for the land when he bought it in 1959. An objection by respondents' counsel on grounds of materiality was sustained. (Answers to interrogatories show that Buckstead paid $70 per acre for the land.)

Appellant points to the general rule that the purchase price of land is some evidence of value at the time of appropriation and is therefore admissible in evidence in condemnation proceedings unless "conditions or values have changed so significantly that it can no longer be said that the purchase price is 'some evidence' of the worth of the land on the latter date." *State ex rel. State Highway Commission v. Henderson*, 381 S.W.2d 10, 12[3] (Mo.App.1964). See also *Kirst v. Clarkson Construction Company*, 395 S.W.2d 487, 496–497[13] (Mo.App.1965). Appellant contends that, if the landowner wants to exclude evidence of the price he paid for the land, he must show the court

that there have been significant changes which made the purchase price irrelevant and nonprobative.

In *Clarkson*, the court noted that it had " * * * found no Missouri case in which the judgment has been set aside on account of either reception or rejection of evidence as to purchase price * * *." 395 S.W.2d at 498[17, 18]. Appellant has cited no later case in which such result occurred. If the court's rejection in 1933 of evidence of purchase price paid in 1928 was explicable on the grounds that the court "well knew" that in that interval, " * * * property had greatly depreciated in value generally" (*State ex rel. Highway Commission v. Pope*, 228 Mo.App. 888, 74 S.W.2d 265, 270[15, 16] (1934)), certainly the well-known appreciation in the selling price of Missouri farm land during the 18 years that Buckstead owned this property would justify the trial court's exercise of discretion (*Kirst v. Clarkson Construction Company*, supra, ibid.) in favor of exclusion of the evidence in this case.

Judgment affirmed.

All concur.